1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EMILY ANN M.,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

           Defendant.

CASE NO. 3:22-CV-5881-DWC

ORDER AFFIRMING DEFENDANT'S
DECISION DENYING BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of his applications for social security insurance (SSI) benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13 the parties have consented to proceed before the undersigned. After considering the record the Court finds no reversable error and affirms the Commissioner's decision to deny benefits.

## I. BACKGROUND

Plaintiff filed an application for SSI on December 17, 2019 alleging disability beginning July 31, 2017. Administrative Record (AR) 15. Her application was denied initially and upon reconsideration. *Id.* After Plaintiff filed a request for a hearing, a telephonic hearing was held

1 before an administrative law judge (ALJ) on June 21, 2021 at which Plaintiff was represented

2 and testified. *Id*. On July 28, 2021 the ALJ issued a written decision denying Plaintiff's claim.

3 AR 13-43. The Appeals Council then denied Plaintiff's request for review, making the ALJ's

4 decision final. AR 2.

## II. THE ALJ'S FINDINGS

6     The ALJ found Plaintiff has the severe impairments of disorders of the spine, including

7 degenerative disc disease of the thoracic and lumbar spine; osteoarthritis; migraines; obesity;

8 anxiety; depression; and trauma-related disorders (20 CFR § 416.920(c)). AR 19.

9     The ALJ found the combination of Plaintiff's impairments do not meet or equal any

10 Listed Impairment. AR 20.

11     The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform

12 light work as defined in 20 CFR § 416.967(b) except:

13       never climbing ladders, ropes, or scaffolds; frequent stooping; no exposure to high
concentrations of smoke, fumes, pollutants, and dust; never have exposure to
14       dangerous machinery and unprotected heights; can do no complex tasks but can do
simple (routine) tasks which I define to mean this person has the basic mental
15       aptitude to meet the demands of competitive, remunerative, unskilled work include
the abilities to, on a sustained basis, understand, carry out, and remember simple
16       instructions; can respond appropriately to supervision, coworkers, and usual work
situations; can deal with changes in routine work settings; can focus attention on
17       simple or routine work activities for at least 2 hours at a time and can stay on task
at a sustained rate such as initiating and performing a task that they understand and
18       know how to do; can work at an appropriate and consistent pace and can complete
tasks in a timely manner; can ignore or avoid distractions while working; can
19       change activities or work settings without being disruptive; can do only low stress
work meaning no high production quotas or piece rate work; can do no tasks
20       requiring tandem or a team effort; and can have occasional and superficial
interactions with public and co-workers, with "superficial" meaning limited to
21       speaking, signaling, taking instructions, asking questions and similar contact, but
with no arbitration, negotiation, confrontation, or supervising others, and no
22       commercial driving.

23 AR 28.

24

1    The ALJ found that a person of Plaintiff's age, with her education, work experience, and

2    RFC, could perform jobs existing in significant numbers in the national economy such as

3    Housekeeping Cleaner, Merchandise Marker, and Photocopy Machine Operator. AR 42.

## III. STANDARD

5    Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of

6    social security benefits if the ALJ's findings are based on legal error or not supported by

7    substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

8    Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the

9    Commissioner's decision must be affirmed if it is supported by substantial evidence and free of

10   harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

11   2008).

12   Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of

13   Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The Supreme Court describes it as "more

14   than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means

15   only—such relevant evidence as a reasonable mind might accept as adequate to support a

16   conclusion." *Id*. (internal quotations omitted).

## IV. DISCUSSION

18   **A. Reopening Request**

19   At the hearing before the ALJ, Plaintiff's counsel asked to reopen Plaintiff's prior SSI

20   claim, which had been decided by another ALJ and denied on June 19, 2018. AR 16. The ALJ

21   declined to do so, explaining that Plaintiff's counsel's contention that Plaintiff did not have the

22   mental capacity to represent herself effectively at the prior hearing was not supported by any

23   evidence. *Id*. The ALJ noted that the record before the ALJ showed Plaintiff's mental exams

24

were "generally unremarkable", her memory was intact, her mood and affect were appropriate, and her judgment was normal. *Id*. The ALJ noted the only "remarkable finding" in the mental health evidence was that one of the state-agency consultative examiners found Plaintiff's test results were "indicative of malingering". *Id*. Further, the ALJ stated the record does not support Plaintiff's counsel's claim that Plaintiff has "mental deficiencies" or is "limited to the exten[t] she is unable to understand the consequences of her actions and unable to make a valid informed choice/consent at her prior hearing." *Id*. The ALJ also noted that Plaintiff's counsel had not pointed to any evidence to support reopening. *Id*.

In addition, because Plaintiff's alleged disability onset date of July 31, 2017 in the newly filed case "falls within the previously adjudicated period" to which "the doctrine of *res judicata* applies", the ALJ amended Plaintiff's alleged onset of disability to June 20, 2018. *Id*.

Plaintiff argues the ALJ erred by failing to properly consider her request to reopen the prior hearing. According to Plaintiff, she was not "adequately advised of her right to obtain a representative at the prior hearing" and she did not understand the procedures for requesting review because she suffers from mental conditions that limit her "ability to do things for herself." Dkt. 16 at 5-6.

Defendant responds that this Court does not have jurisdiction to review a refusal to re-open a claim for disability benefits or a determination that such a claim is *res judicata* unless Plaintiff makes a colorable constitutional claim that the decision not to reopen violates the due process clause of the Fifth Amendment, which she has not done. Dkt. 18 at 2-3 (citing *Krumpelman v. Heckler*, 767 F.2d 586, 588 (9th Cir. 1985) and *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990)).

1    Plaintiff replies that the opening brief does actually set forth a due process claim

2    "because the ALJ declined to reopen Plaintiff's prior claim without properly developing the

3    record with respect to that claim." Dkt. 19 at 2. Specifically, Plaintiff argues the ALJ failed to

4    review the transcript of Plaintiff's first hearing, during which she testified but was unrepresented,

5    to determine whether the ALJ advised her of her right to counsel. *Id*. However, Plaintiff's

6    opening brief never invokes a due process claim; it simply argues that the ALJ's failure to obtain

7    a transcript of the hearing in which an ALJ allegedly advised Plaintiff of her right to

8    representation, and Plaintiff allegedly waived it, represents good cause for reopening. Dkt. 16 at

9    3-6.

10    Generally, courts do not have jurisdiction to review the Commissioner's decision not to

11    reopen a previously adjudicated claim. *See*, *Krumpelman v. Heckler*, 767 F.2d 586, 588 (9th

12    Cir.1985), *cert. denied sub nom. Krumpelman v. Bowen*, 475 U.S. 1025 (1986); *Davis v.*

13    *Schweiker*, 665 F.2d 934 (9th Cir.1982). If, however, a person makes a colorable constitutional

14    claim that the decision not to reopen violates the due process clause of the Fifth Amendment, this

15    Court has jurisdiction. *See*, *Califano v. Sanders*, 430 U.S. 99, 109 (1977).

16    Here, Plaintiff did not make a colorable constitutional claim in her opening brief that the

17    ALJ's decision not to reopen her previous claim violates due process. Because this claim was not

18    raised clearly and distinctly in her opening brief, the Court finds that it has been waived. *See*,

19    *McKay v. Ingleson*, 558 F.3d 888, 891 n. 5 (9th Cir. 2009) ("Because this argument was not

20    raised clearly and distinctly in the opening brief, it has been waived"). Accordingly, this Court

21    lacks jurisdiction over Plaintiff's reopening request.

22    **B.  Plaintiff's Testimony**

23    Plaintiff argues the ALJ improperly rejected her testimony.

24

1. ## The ALJ's Findings

The ALJ summarized Plaintiff's testimony as follows:

The claimant reported disability due to panic attacks; degenerative spine disease, poor sleep; She also alleged a learning disability and difficulty completing tasks.. She also noted issues with, essentially, all mental and physical tasks and activities of daily living. She reported that she does not drive because she is too scared.

* * *

The claimant testified that she attended 1-2 years of college; she does not drive much, maybe 10-20 minutes, 2-3 times per week; she drives to the grocery store or to take care of tasks; she has a Nissan Leaf; she attends some appointments in person, including physical therapy and her doctor; she had ankle surgery on March 8, 2021; she has issues standing and walking for long periods; she does not walk the dogs right now; she has swelling and pain with walking; she had an issue standing for more than 30 minutes when she went shopping with her daughter and friend; her biggest issues is constant back pain; the pain affects her sleep; her back pain has worsened since 2017; she has three children living with her, ages 16, 14, and 1; she has panic attacks frequently when in a store; when she has a panic attacks she needs to be in a quiet, serene environment; and she has 5-6 panic attacks a week, lasting 30 minutes to days at a time (Testimony).

AR 29 (internal citations omitted).

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements about their intensity, persistence and limiting effects are not entirely consistent with the medical evidence and other evidence in the record. AR 29-30.

Regarding Plaintiff's alleged physical limitations, the ALJ noted that contrary to Plaintiff's alleged standing and walking limitations she admitted to walking on trails with her children on Mother's Day, did not consistently report significant symptoms to medical providers, usually denied pain, numbness, focal weakness, balance problems, dizziness, changes in gait, difficulty walking, headaches and migraines. AR 33. In addition, despite allegations of significant limitations with sitting, climbing, postural activities, lifting, and carrying, the ALJ found that aside from "consistent findings of obesity" and some limitations in her right lower

1   extremity and lumbar and thoracic spine, examination findings were "otherwise generally

2   unremarkable for deficits in range of motion throughout, strength throughout, gait, sensation

3   throughout, edema, focal deficits, movement of her extremities, straight leg raise testing, use of

4   ambulatory aids, rising from a seated position, and reflexes". AR 33.

5        Regarding Plaintiff's allegedly disabling migraine headaches, the ALJ found that

6   Plaintiff's medical record "does not support that she consistently reported headaches or

7   migraines to medical providers. Far more often, she denied migraines or headaches." AR 34.

8   Accordingly, the ALJ reasoned, "The fact that she did not report headaches consistently

9   throughout the record, and [they] have not been of notable intensity for long periods, suggests

10  that her headaches are rarely significant." *Id*.

11       The ALJ summarized the medical experts' opinions about Plaintiff's alleged physical

12  limitations as follows:

13       After reviewing the medical evidence of record available to them, including some
         of the aforementioned physical examination findings and imaging, the state agency
14       medical consultants opined, in part, that the claimant is limited less than a full range
         of light exertion. These opinions do not suggest a disabling degree of physical
15       functional limitation, and **they do not support and are inconsistent with, the
         claimant's allegations of significant limitations on climbing, standing, walking,
16       using her upper extremities, climbing, and performing postural activities.**

17  *Id*. (emphasis added).

18       Regarding Plaintiff's alleged mental limitations, the ALJ found many inconsistencies in

19  the record between Plaintiff's allegations and presentation. *Id*. Despite Plaintiff's allegations of

20  disability due to panic attacks, a learning disability, and difficulty with essentially all mental

21  areas of functioning, and her reports that she does not spend time with others, does not drive or

22  shop, and cannot handle her finances, the ALJ found evidence that Plaintiff's activities of daily

23  living do not support such extreme limitations. AR 33, 35. The ALJ pointed to reports from

24

1    Plaintiff's mother and stepfather stating that Plaintiff did not have issues with personal care,

2    drove a car, shopped in stores alone, was able to pay her bills and use a checkbook, and spent

3    time with others including on the phone "a lot". AR 33, 35. The ALJ also found that Plaintiff

4    spent time under "house arrest" during the relevant period for driving a friend to a pawn shop

5    with stolen merchandise, and at the hearing she testified she drove multiple times per week,

6    contrary to her statements on her disability application. *Id*.

7        The ALJ observed that during the hearing Plaintiff "did not demonstrate nor exhibit any

8    difficulty understanding, remembering, concentrating on, persisting with, or tolerating the stress

9    of interacting with others" and that her testimony "was responsive to the questions asked,

10   thorough, and succinct". AR 29, 35.

11       The ALJ found evidence of drug-seeking behavior to Plaintiff's mental healthcare

12   providers, wherein she requested "benzos" from at least one, and indicated she was searching for

13   a doctor to prescribe the medications she desired. AR 35. The ALJ found additional evidence

14   that Plaintiff was upset with another doctor who refused to prescribe narcotics for the duration

15   Plaintiff requested. *Id*. The ALJ reasoned this evidence "calls into question the claimant's reports

16   to her medical providers as to her symptoms and reported limitations." *Id*.

17       On May 24, 2019 state-agency psychological evaluator J. Alex Crampton, Psy.D.

18   (Crampton) conducted an examination of Plaintiff during which Plaintiff was well groomed and

19   appropriately dressed, made poor-to-fair eye contact, and spoke within normal limits but

20   exhibited an "attitude and behavior" consistent with "significant malingering". AR 35, 39.

21   Crampton found the following of particular note: Plaintiff reported experiencing at least two

22   "panic attacks" during the course of his evaluation though she showed no signs of actual panic;

23   her mood was anxious and her affect was tense and restless (which Crampton interpreted to be

24

1   "likely purposefully manifested"); Plaintiff claimed to experience hallucinations and delusions

2   (which Crampton advised to "interpret with caution due to malingering"); though Plaintiff

3   initially signed a consent form and wrote the correct date, when asked what the date was during

4   the examination she was "disoriented as to the day of the month" (which Crampton advised to

5   "interpret with caution"); Plaintiff performed "very poorly on the TOMM" despite no apparent

6   recent or remote memory impairment; she performed serial 3's with 2 errors (which Crampton

7   advised to "interpret with caution due to malingering") and finally; Plaintiff claimed her anxiety

8   caused poor insight and judgment (which Crampton said was "unclear due to credibility

9   concerns"). *Id*.

10      In addition to finding Crampton's conclusion that Plaintiff's test results undermined her

11   allegations of significant mental functional limitations, the ALJ also found other medical

12   evidence in the record did the same, and ultimately concluded Plaintiff's mental limitations were

13   not consistent with her daily functioning, examination findings, or the medical opinions the ALJ

14   found persuasive. AR 36.

15      2.  <u>Testimonial Evidence Standard</u>

16      "The ALJ conducts a two-step analysis to assess subjective testimony where, under step

17   one, the claimant must produce objective medical evidence of an underlying impairment or

18   impairments that could reasonably be expected to produce some degree of symptom."

19   *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks

20   omitted). "If the claimant meets this threshold and there is no affirmative evidence of

21   malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms

22   only by offering specific, clear and convincing reasons for doing so." *Id*.

23      When assessing a claimant's credibility the ALJ may consider "ordinary techniques of

24   credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

1   symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273,

2   1284 (9th Cir. 1996). The ALJ may also consider if a claimant's complaints are "inconsistent

3   with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294,

4   1297 (9th Cir. 1998).

5        However, affirmative evidence of symptom magnification, or malingering, relieves an

6   ALJ from the burden of providing specific, clear, and convincing reasons for discounting a

7   claimant's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Morgan v. Comm'r*

8   *of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Berry v. Astrue*, 622 F.3d 1228, 1235

9   (9th Cir. 2010) (upholding finding where ALJ "pointed to affirmative evidence of malingering").

10        Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*,

11   694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility

12   determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may

13   not reverse a credibility determination where that determination is based on contradictory or

14   ambiguous evidence. *Id*. at 579.

15     3.   <u>Analysis</u>

16        Plaintiff argues the ALJ's assessment of her testimony is erroneous as it turns on

17   Crampton's finding of malingering, which Plaintiff claims is "not supported by the rest of the

18   record", and that the ALJ over-emphasizes Plaintiff's testimony about driving. Dkt. 16 at 11-12.

19        Plaintiff references state-agency reviewing doctor Eugene Kester (Kester), who

20   determined on August 3, 2020 that Plaintiff had mental health conditions that resulted in

21   moderate limitations in her ability to understand, remember, and apply information, interact with

22   others, concentrate, persist, maintain pace, and adapt or manage oneself. *Id*. at 12. Plaintiff

23   claims Kester's opinion is opposite to Crampton's, and since the ALJ stated at step two of the

24   sequential evaluation that he found Kester's opinion persuasive, it was improper for the ALJ to

then rely on Crampton's opinion as the "primary reason to discount [her] testimony." *Id*. at 13. In addition, Plaintiff argues the ALJ misconstrued her statements about driving because she said she prefers not to drive as she is afraid, not that she is unable. *Id*.

Defendant responds that the ALJ, having found affirmative evidence of malingering, provided specific, cogent reasons to discount Plaintiff's subjective complaints. Dkt. 18 at 4 (citing *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999) and *Carmickle v. Comm'r of Soc. Sec. Admin*., 533 F.3d 1155, 1160 (9th Cir. 2008)). Defendant contends there is nothing inconsistent about the ALJ crediting Kester's assessment of moderate mental limitations and also crediting Crampton's findings of malingering. *Id*. Moreover, Defendant argues the ALJ also provided clear and convincing reasons to discount Plaintiff's testimony, such as her drug-seeking behavior, which the Ninth Circuit has affirmed may be used to discount a claimant's testimony[1], her inconsistent activities of daily living[2], her inconsistent statements, and a lack of objective medical evidence to support the degree of limitations she alleged. *Id*. at 5-9.

The affirmative evidence of malingering relieves an ALJ of the burden of providing specific, clear, and convincing reasons for discounting a claimant's testimony. *Greger*, 464 F.3d at 972. Here the ALJ persuasively found that Crampton's conclusion Plaintiff was malingering undermined her alleged symptoms and statements. AR 35, 39. This finding was supported by substantial evidence as Crampton identified numerous data points that raised symptom magnification and/or fabrication such as Plaintiff's apparently feigned panic attacks, disorientation, and restlessness during Crampton's exam, and her claim of hallucinations and delusions despite no other evidence of such symptoms in the record. *Id*. Crampton's finding of

---

[1] *See*, *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).

[2] *See*, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

1    malingering was, alone a valid reason to discount Plaintiff's testimony. *See, Carmickle v.*

2    *Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1162 (9th Cir. 2008). Because the ALJ provided at

3    least one valid reason, supported by substantial evidence, to discredit Plaintiff's testimony, the

4    Court need not address the remaining reasons he cited, as even if those reasons were erroneous,

5    such error would be harmless. Accordingly, the Court finds no error in the ALJ's assessment of

6    Plaintiff's testimony.

7    **C.  Lay Witness Evidence**

8          Plaintiff's mother, stepfather, and significant other submitted statements regarding their

9    observations of Plaintiff. AR 291-298, 310-316, 354-355, 358.

10         The ALJ noted throughout his decision various statements from Plaintiff's mother and

11   stepfather, many of which contradicted Plaintiff's testimony. AR 23-26, 29. However, the ALJ

12   acknowledged that he "did not provide an analysis of the non-medical opinions of record,

13   pursuant to 20 CFR [§] 416.920c." AR 41.

14         Plaintiff argues the ALJ "did not address the activities the witnesses said Plaintiff cannot

15   handle, such as standing for long periods, interacting with authority figures, remembering

16   instructions, exercising appropriate judgment, or leaving the house on her own." Dkt. 16 at 16.

17   The ALJ's failure to cite specific and legitimate reasons germane to each witness to reject these

18   statements is, according to Plaintiff, reversible error. *Id*. at 16-17.

19         Defendant responds the Commissioner's revised regulations do not require ALJ's to

20   articulate how they consider non-medical sources, whereas Plaintiff's argument relies on old

21   regulations and case law. Dkt. 18 at 16.

22         The Court concurs with Defendant that the ALJ was not required to articulate how he

23   considered lay witness evidence. *See*, 20 C.F.R. §§  416.902c (public agency employees are

24   nonmedical sources), 416.920c(d); *see, Fryer v. Kijakazi*, Case No. 21-36004, 2022 WL

1  17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) ("it is clear [ALJs] are no longer required to

2  articulate [lay witness evidence] in their decisions"). Accordingly, the Court finds no merit to

3  Plaintiff's lay witness testimony objection.

4  **D.  Medical Evidence**

5      The ALJ found several healthcare opinions in the record to be totally or partially

6  unpersuasive. However, Plaintiff only objects to the opinions of Dr. Gregory Ennis, M.D. and

7  Dr. Yancey Sloan Jr., M.D..

8      1.  <u>Medical Evidence Regulations</u>

9      Under the revised regulations, ALJs "will not defer or give any specific evidentiary

10 weight, including controlling weight, to any medical opinion(s) or prior administrative medical

11 finding(s) …". 20 C.F.R. §§ 416.1520c(1) and 416.920c(a). Instead, ALJs must consider every

12 medical opinion or prior administrative medical findings in the record and evaluate each

13 opinion's persuasiveness using a list of factors listed. *See*, 20 C.F.R. §§ 416. 1520(c)(a) and

14 416.920c(a). The two most important factors are the opinion's "supportability" and

15 "consistency." *Id*. ALJs must explain "how [they] considered the supportability and consistency

16 factors for a medical source's medical opinions or prior administrative medical findings in [their]

17 … decision." 20 C.F.R. §§ 416.1520c(b)(2) and 416.920c(b)(2).

18     "Supportability means the extent to which a medical source supports the medical opinion

19 by explaining the 'relevant … objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785,

20 791-2 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)); *see also*, 20 C.F.R. § 416.920c(c)(1).

21 "Consistency means the extent to which a medical opinion is 'consistent … with the evidence

22 from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. §

23 404.1520c(c)(2)); *see also*, 20 C.F.R. § 416.920c(c)(2).

24

1    2.  <u>Analysis</u>

2        *a.  Gregory Ennis, M.D.*

3        Gregory Ennis, M.D. (Ennis) opined on June 19, 2019 that Plaintiff "is very limited in

4   what she could do for work", she could only work in a self-paced program; she needs frequent

5   breaks; she is not able to stand longer than 10 minutes at a time; no lifting over 10 pounds; no

6   lifting anything above the waist; and no squatting, kneeling, or crawling. AR 476, 478. On July

7   26, 2019 Ennis further opined that Plaintiff was limited to no lifting over five pounds; no

8   standing longer than 10 minutes; no sitting longer than 10 minutes; no bending forward beyond

9   45 degrees; no back extension; that anxiety interferes with her interactions; no driving if having a

10  panic attack; and that she is severely limited in lifting five pounds and standing or walking more

11  than 10 minutes at a time. AR 423-425.

12       The ALJ discounted Ennis's opinions because they predate the relevant period and

13  portions of his opinions "subsume the ultimate issue of disability" reserved to the Commissioner.

14  AR 37. Further, the ALJ found Ennis's opinions were inconsistent with his "contemporaneous

15  examination findings" including:

16       … from May 23, 2019, showing only decreased range of motion in the lumbar
         spine, no findings otherwise, and a normal mood, affect, and behavior; June 25,
17       2019, showing no remarkable findings, and a normal mood, affect, and behavior;
         July 25, 2019, showing decreased range of motion in the lumbar spine with spasm;
18       a normal mood, anxious affect, and unimpaired cognition and memory; August 22,
         2019, showing decreased range of motion in the spine and otherwise unremarkable
19       mental and physical findings; and September 24, 2019, showing no remarkable
         findings, including normal mood, affect, and behavior.
20
    *Id*. (internal citations omitted).
21
22       The ALJ explained these examination findings do not support the inconsistent, "extreme

23  limitations" opined by Ennis. *Id*. The ALJ further stated that other than consistently finding

24  obesity, "some limitations in right lower extremity range of motion, strength, swelling, and gait

from October of 2020 through May of 2021" and "some pain with range of motion and palpation

to the lumbar and thoracic spine", Ennis's examination findings were "generally unremarkable

for deficits in range of motion throughout, strength throughout, gait, sensation throughout,

edema, focal deficits, movement of her extremities, straight leg raise testing, use of ambulatory

aids, rising from a seated position, and reflexes". *Id*. Therefore, the ALJ concluded that Ennis's

opinions lacked supportability. AR 37-38.

Plaintiff argues the ALJ improperly rejected Ennis's July 26, 2019 opinion on the basis

that it predated the relevant period, and also because Plaintiff insists the record shows she had

decreased range of motion in her lumbar spine with muscle spasms and tenderness to palpation at

virtually every appointment with Ennis. Dkt. 16 at 7-8 (citing AR 37-38).

Defendant responds that Ennis's earlier assessments of Plaintiff contained similarly

extreme opinions, so any error the ALJ may have committed in finding Ennis's opinion predated

the relevant period was harmless, at most, particularly because the ALJ provided other legally

sufficient reasons to reject Ennis's opinion. Dkt. 18 at 11-12. Specifically, Ennis's neurological

and musculoskeletal exams were unremarkable except for occasional limited range of motion

and subjective tenderness, and therefore did not support his opinion that Plaintiff could not sit or

stand for more than 10 minutes or lift more than five pounds. *Id*. Similarly, Defendant insists the

ALJ correctly concluded that Ennis's opinion was inconsistent with other medical evidence in

the record revealing a generally normal, unassisted gait, no difficulty rising from a seated

position, and generally normal strength, sensation and reflexes. Dkt. 18 at 13.

As stated above, the ALJ found Ennis's opinions: (1) predate the relevant period; (2)

"subsume the ultimate issue of disability" reserved to the Commissioner, at least in part, and; (3)

are inconsistent with his "contemporaneous examination  findings". AR 37-38. With respect to

1  inconsistency, the ALJ pointed to "contemporaneous examination findings" showing normal,

2  unassisted gait (AR 38, 1126, 2579, 2963); no edema (AR 38, 1032, 1314, 2579); negative leg-

3  raising tests (AR 38, 1127); no difficulty rising from a seated position (AR 38, 1126); normal

4  strength, sensation, and reflexes (AR 38, 1126, 2963). These were valid reasons to find Ennis's

5  opinion was not consistent with other medical sources and nonmedical sources in the record. *See*,

6  *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); *see also*, 20 C.F.R. §

7  416.920c(c)(2).

8      Defendant also points out that the Ninth Circuit has affirmed the rejection of medical

9  opinions similar to Ennis's where tenderness, reduced range of motion, and reduced grip strength

10  were observed, but the claimant also had negative straight-leg-raise tests, no muscle spasms,

11  normal motor strength, normal sensation, normal reflexes, and no signs of radiculopathy. *See*,

12  *Santiago v. Saul*, 777 F. App'x 237, 238 (9th Cir. 2019) (unpublished); *see also*, *Nielsen v.*

13  *Kijakazi*, No. 19-35857, 2021 WL 4521118, at *1 (9th Cir. Oct. 4, 2021) (unpublished)

14  (affirming exams showing "only some decreased muscle strength, sensation, and reflexes"

15  undermined an opined limitation from "significant back pain").

16      Because the ALJ's inconsistency finding is a valid reason to reject Ennis, the Court need

17  not address the remaining reasons the ALJ cited. *Carmickle*, 533 F.3d at 1162. Accordingly, the

18  Court finds the ALJ provided legally sufficient reasons supported by substantial evidence to

19  reject Ennis.

20      *b.  Dr. Yancey Sloane*

21      On October 2, 2020 Yancey Sloane, Jr., M.D. (Sloane) opined Plaintiff had limitations in

22  the ability to lift heavy objects, stand or sit for long periods, bend over, work for more than 21 to

23  30 hours per week, was limited to sedentary work, and that her conditions are permanent. AR

24  1402-1403.

1    The ALJ found Sloane's opinion to be "vague as to no lifting of 'heavy objects' and no

2   standing or sitting for 'long periods'" and her opinion about how many hours per week Plaintiff

3   could work "addresses the ultimate issue of disability, which is reserved to the Commissioner."

4   AR 38. Further, the ALJ found Sloane's opinion was "inconsistent with the medical evidence of

5   record, including the examination findings and persuasive medical opinions" such as:

6        [On] May 26, 2021, she noted that the claimant's gait and station were
         unremarkable, and "very improved from last visit"; she had some limited range of
7        motion in the right ankle; and she was otherwise physically and psychiatrically
         unremarkable throughout. The prior exams showed some deficits with gait, but
8        were also otherwise unremarkable physically and mentally.

9   *Id*. (internal citations omitted).

10    Plaintiff argues the ALJ erred by rejecting Sloane's opinion on the basis that it expressed

11   an "opinion reserved to the Commissioner" because "the limited number of hours of work per

12   week assessed by Sloane "is essentially equivalent to [] Sloane opining that Plaintiff could not sit

13   or stand for a combined total of 8 hours in a work day". Dkt. 16 at 9.

14    Defendant responds the ALJ validly found Sloan's opinion to be vague because it listed

15   limitations such as no lifting "heavy objects," standing or sitting "for long periods of time," and

16   bending over which were not useful functional findings. Dkt. 18 at 14 (citing *Ford v. Saul*, 950

17   F.3d 1141, 1156 (9th Cir. 2020) (affirming the ALJ's finding that the doctor's descriptions of

18   Ford's ability to perform in the workplace as 'limited' or 'fair' were not useful because they

19   failed to specify Ford's functional limits"). Moreover, Defendant insists Sloane's opinion was

20   inconsistent with the substantial medical evidence showing normal, unassisted gait, no edema,

21   negative leg-raising tests, no difficulty rising from a seated position, normal strength, sensation,

22   and reflexes. *Id*. at 15.

23

24

1  The Court finds no merit to Plaintiff's argument the ALJ should have translated Sloane's
2  statement into an opinion that Plaintiff "could not sit or stand for combined total of 8 hours in a
3  work day". Dkt. 16 at 9. To the contrary, the Court finds the ALJ's rejection of Sloan's opinion
4  as a finding reserved to the Commissioner was legally valid. *See*, *Matthews v. Shalala*, 10 F.3d
5  678, 680 (9th Cir.1993); *see also*, 20 C.F.R. § 416.920b(c)(3)(i)(a statement reserved to the
6  Commissioner includes "[s]statements that you are or are not … able to perform regular or
7  continuing work."). In addition, the ALJ found Sloan's opinion was inconsistent with
8  "examination findings and persuasive medical opinions" showing no mental issues and
9  indicating physical improvement. AR 38, 2652, 2960-2961, 2963. These were valid reasons to
10  reject Sloan's opinion. Accordingly the Court finds the ALJ's assessment of Sloane's opinion
11  was legally sufficient and based on substantial evidence.

12  ## V. CONCLUSION

13  For the foregoing reasons the Court hereby AFFIRMS Defendant's decision denying
14  benefits.

15  Dated this 7th day of July, 2023.

16

17  _____
   David W. Christel
18  United States Magistrate Judge

19

20

21

22

23

24